IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANGELA PEREZ,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
                            /

No. C 10-05763 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals the denial of her claims for disability insurance and supplemental security income benefits. For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

## STATEMENT

Plaintiff filed applications for disability insurance benefits in August 2008 and supplemental security income in November 2008, alleging a disability onset date of June 11, 2007. The applications were denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge, and one was held on May 26, 2010. At the hearing, plaintiff was represented by counsel. Plaintiff testified in her own behalf, and a vocational expert also testified. In June 2010, the ALJ denied the claims for disability insurance benefits and supplemental security income. The Appeals Council denied plaintiff's request for review,

making the ALJ's decision final (AR 1–5, 10, 45). Plaintiff then filed this action for judicial review of the ALJ's decision.

The ALJ found that plaintiff had "the following severe impairments: chronic neck and back pain/strain versus fibromyalgia, and obesity." Those severe impairments, however, did not meet or exceed any medically listed disability singly or in combination. The ALJ then assessed plaintiff's residual functioning capacity in light of her severe impairments. The ALJ did not find the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" credible to the extent they were inconsistent with the residual functional capacity assessment (AR 47, 50–51).

Furthermore, the ALJ found that "there [was] insufficient evidence to show that the [plaintiff's] impairments [were] as severe as alleged." This is because the objective evidence and medical findings were inconsistent with plaintiff's allegations, plaintiff was inconsistent with her treatment plan, and plaintiff testified she could not take long trips but went to Mexico. The ALJ gave significant weight in her decision to the medical opinions of Dr. Clark Gable, Dr. G. Spellman, and Dr. D. Pong, and little weight to Dr. L. Neena Madireddi's and chiropractor, Mr. Todd Bedell's opinions (AR 51–52).

Based on plaintiff's residual functioning capacity, the ALJ found that she was "capable of performing past relevant work as a secretary" as well as "other jobs existing in the national economy." The ALJ therefore concluded that plaintiff "has not been under a disability, as defined in the Social Security Act" and was not entitled to disability insurance and supplemental security income benefits (AR 53–54).

In this action, plaintiff disagrees with the ALJ's decision that she is capable of performing her past relevant work or working in other jobs. She asserts that "the ALJ failed to properly evaluate the medical evidence in assessing her residual functional capacity." Moreover, plaintiff maintains that the "ALJ failed to properly evaluate her subjective complaints" (Br. 3). Plaintiff moves for summary judgment reversing the ALJ's decision and awarding benefits or, alternatively, remanding for further administrative proceedings. Defendant opposes plaintiff's

motion and moves for summary judgment affirming the ALJ's decision (Br. 2). This order follows full briefing.

## ANALYSIS

A decision denying disability benefits and supplemental security income shall be upheld on appeal if it is supported by substantial evidence and free of legal error. Substantial evidence is "more than a scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The court must consider the entire administrative record, including evidence that does not lend support to the ALJ's conclusion. Where evidence in the record is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### 1. THE ALJ PROPERLY EVALUATED THE EVIDENCE IN ASSESSING PLAINTIFF'S FUNCTIONAL CAPACITY.

Plaintiff contends that the ALJ's residual functional capacity assessment "lacks the support of substantial evidence." Plaintiff argues two points: (1) the ALJ failed to properly assess the effects of plaintiff's obesity on her ability to work, and (2) the ALJ's decision is indicative of an extreme lack of "medical understanding of the debilitating effect of fibromyalgia" (Br. 3–4, 7).

#### A. Plaintiff's Obesity.

Plaintiff argues that "it was impossible for the ALJ to correctly evaluate [plaintiff's residual functional capacity] if she did not consider the interactive effects of her morbid obesity." She maintains that "proper evaluation of her obesity taken together with her other severe impairments would result is [sic] a more restrictive" residual functional capacity" (Br. 6–7). In support of her argument, plaintiff notes that the ALJ failed to mention Social Security Ruling 02-1p in her decision, which sets out the requirements for evaluating obesity in assessing residual function capacity. Moreover, the ALJ allegedly recited plaintiff's allegations and doctors' findings, but "provided no analysis of obesity in her decision." Plaintiff now urges the Court to "find error *per se* in a decision where there is no analysis on the impact obesity has on a

3

[residual functioning capacity] and in which a claimant has a BMI over 30 and suffers from neck and back pain" (Br. 6).

This order finds that plaintiff's obesity was properly considered by the ALJ in making her residual functioning capacity assessment. The ALJ found that plaintiff's obesity was a "severe impairment," along with her chronic neck and back pain/strain. The ALJ also noted that Dr. Gable observed that plaintiff was obese (AR 47–48). Furthermore, when considering whether plaintiff's impairment(s) met or medically equaled one of the listed impairments, the ALJ "considered listings 1.04, 14.06 and obesity and [found] that the claimant's impairments, singly or in combination, do not meet or equal the listings considered" (AR 50). The ALJ also analyzed the restrictions and limitations on movement noted by plaintiff's doctors, like Dr. Gable, who diagnosed plaintiff's obesity and neck and back pain, but nonetheless opined that plaintiff could perform light work (AR 48–52). To the extent that the ALJ discredited plaintiff's subjective complaints in this analysis, it was proper (and is discussed in further detail below).

In addition, defendant correctly notes that "[a]n ALJ need not speculate that a claimant's obesity results in additional limitations" (Br. 3). Although obesity is not a separately listed impairment in the Code of Federal Regulations, a claimant can meet the requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-01p, 2000 WL 628049, at *4 (Sept. 12, 2002). The Rule, however, explains that an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case *based on the information in the case record.*" *Burch v. Barnhart*, 400 F.3d 676, 682–83 (9th Cir. 2005) (emphasis added) (quoting SSR 02-01p, 2000 WL 628049, at *6). The ALJ's decision properly considered the evidence of obesity contained in the record.

### B. Plaintiff's Fibromyalgia.

Plaintiff next contends that the "ALJ's decision is also indicative of an extreme lack of medical understanding of the debilitating effect of fibromyalgia," and the "ALJ improperly

4

assigned greater weight to the opinions of the examining physician over those of Dr. Madireddi, the treating physician" (Br. 7). Not so.

The ALJ found that plaintiff was not diagnosed with fibromyalgia based on any objective tests. Instead, when no other cause for plaintiff's continued complaints could be discovered, "Dr. Madireddi made a working diagnosis of fibromyalgia and referred the claimant to a rheumatologist for evaluation" (AR 51). Plaintiff claimed she was unable to afford a referral to a rheumatoglogy specialist for her working diagnosis of fibromyalgia, but the ALJ noted that she was able to spend limited resources on "regular chiropractic visits that she stated [gave] her no lasting benefit" and did not seek free or reduced medical care, available at Santa Clara Valley Medical Center in San Jose, California. The ALJ found that "[t]his pattern of behavior does not invoke the image of one who is suffering from uncontrolled symptoms or significant limitations that might motivate one to pursue such options" (AR 52). The ALJ also stated that Dr. Madireddi's treatment notes consistently indicated plaintiff's conditions were "stable" and that she saw benefits from taking Cymbalta, a prescribed medication (AR 51). The ALJ further provided (AR 52):

> [T]here are no objective laboratory studies consistent with [plaintiff's] degree of alleged symptoms. The only reported significant, chronic clinical signs involve trigger points that are not found when she is examined [by] an internist on consultative examination and she has not complied with treatment source referral for a rheumatology evaluation. Hence, the supporting medical evidence involves mostly subjective complaints, even for the trigger points and the opinion evidence.

Plaintiff contends that the diagnosis was wrongly rejected because it was not corroborated by objective evidence. In support, she cites to out-of-circuit decisions, which state that the symptoms of fibromyalgia are subjective (Br. 7). Unlike those decisions, however, the ALJ found plaintiff's subjective complaints — the only basis for Dr. Madireddi's diagnosis — not to be credible. Plaintiff's credibility is discussed in further detail below.

Plaintiff is correct that the ALJ gave more weight to the medical opinions of Dr. Gable, Dr. Spellman, and Dr. Pong, while giving less wait to the opinions of Dr. Madireddi and Mr. Bedell (AR 52). Plaintiff argues that this was improper because the treating physician's

5

opinions are entitled to greater deference than a consulting physician. This is true, but it is not an absolute concept. Our court of appeals has explained:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."
> *Id.* § 404.1527(d)(2).

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Thus, the general guideline that the treating physician be favored over a non-treating physician is not absolute and can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The ALJ set forth sufficient reasons to comply with this standard.

The ALJ set forth her reasons for discounting Dr. Madireddi's medical opinion, that "plaintiff would be incapable of even low stress jobs and would not be able to perform sedentary exertion," as follows (AR 52):

> Dr. Madireddi's medical opinion is inconsistent with the evidence of record as a whole including her own treatment notes. For example, Dr. Madireddi opined that the claimant had severe limits for reaching, handling and fingering, but reports no pain in the shoulders, arms, hands. . . . Importantly, when specifically asked, Dr. Madireddi did not identify or list clinical findings, lab results or test results that would show or support the claimant's medical impairment, which leads to the conclusion that the diagnosis and assessment is based entirely on the claimant's subjective complaints and reports.

The other doctors, whose opinions were given significant weight by the ALJ, rendered medical opinions "consistent with the evidence of record as a whole, including lack of objective evidence and medical findings on the treating physician's part. Their medical opinions [took] into consideration the claimant's subjective allegations, rather than completely dismissing it" (AR 52). Contrary to plaintiff, the ALJ set forth legally sufficient reasons for giving less weight to Dr. Madireddi's opinions and properly evaluated the evidence in the record.

### 2. PLAINTIFF'S SUBJECTIVE COMPLAINTS WERE PROPERLY EVALUATED.

Plaintiff also argues that "the ALJ failed to set forth legally sufficient reasons for discounting her subjective complaints" (Br. 9). Plaintiff asserts that the ALJ wrongly discounted

6

the plaintiff's credibility based on a lack of corroborating objective evidence and the extent of plaintiff's daily activities. This order, however, finds that the ALJ properly evaluated plaintiff's subjective complaints and set forth sufficient reasons for finding some of plaintiff's testimony not to be credible.

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they are not consistent with the residual functional capacity assessment. *First*, the ALJ stated that there is insufficient evidence to show plaintiff's impairments to be as severe as she alleged them to be (AR 51):

> [T]he objective evidence and medical findings were inconsistent with the claimant's allegations. While the claimant initially exhibited decreased range of motion and tenderness over cervical and lumbar spines, a lumbar MRI was normal while a cervical MRI showed only minimal degenerative changes. Additionally, during the consultative examination, the claimant exhibited full range of motion of the cervical spine, upper and lower extremities as well as a normal gait.

Although Dr. Madireddi made a working diagnosis of fibromyalgia due to plaintiff's continued complaints of pain, Dr. Gable noted that she "did not have the sufficient trigger points that would support a fibromyalgia diagnosis." Treatment notes also indicated plaintiff's condition was "stable" and that she did see "benefits from Cymbalta" (AR 51).

*Second*, the ALJ found plaintiff's credibility to be lacking due to inconsistent treatment of her alleged impairments (AR 51). Treatment notes indicated that plaintiff was reluctant to take her prescribed medications. She was also starting and stopping medications on her own and requested to go back and forth on prescription medications Lyrica and Cymbalta to treat her condition (AR 51). Moreover, plaintiff claimed she was unable to afford a referral to a rheumatologist as recommended by Dr. Madireddi, but she continued to "spend limited resources on regular chiropractic visits that she stated [gave] her no lasting benefit." Plaintiff also did not seek "free or reduced medical care from [Santa Clara] Valley Medical [Center], especially to follow up with a rheumatologist" (AR 52).

*Third*, the ALJ found plaintiff's actual functional abilities to be inconsistent with her stated abilities to work (AR 51–52). For example, plaintiff testified that she was "unable to take long road trips, sit for a prolonged amount of time, or even walk further than a block for fear that

she would not be able to walk back home; however, the treatment notes indicate that [she] traveled to Mexico to visit family" (AR 51). The trip required plaintiff to sit for a prolonged period contrary to her statements that she was unable to do so. Based on the evidentiary record, the ALJ found that plaintiff's behavior invokes the image of someone who "has no significant uncontrolled symptoms that interfere with her basic choices or that motivates her to seek evaluation with a referred specialist."

The ALJ thus set forth sufficient reasons for discrediting some of plaintiff's testimony and subjective complaints of pain. Accordingly, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: November 29, 2011.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE